STATE OF IOWA, Appellee, v. A. E. PHILLEO, Appellant.

**CRIMINAL LAW:** Conspiracy—Evidence—Declarations of Co-Con-
1, 3 spirator.  On the trial of defendant for keeping a house of prostitution, relevant declarations and conduct of a co-defendant, not in the presence of defendant, are admissible, it being first shown that said parties were partners in the running of the house, were acting together, and in many instances were both present when various acts of prostitution and lewdness were committed in said house.

**PROSTITUTION, HOUSE OF:** Evidence—Character of House—Dec-
2 larations.  Declarations of those concerned in operating an alleged house of prostitution, other than defendant on trial, and in the absence of defendant, are competent if tending to show the character of the place and inmates.

**CRIMINAL LAW:** Conspiracy—Evidence—Declarations of Co-Con-
1, 3 spirator.

**TRIAL:** Objections—Sufficiency.  The objection that a question calls
4 for a "conclusion" is not included in the objection that it is irrelevant, immaterial and incompetent.

**TRIAL:** Conduct of Court—Criticism of Witness.  No error is re-
5 vealed by the action of the court in stating to an evasive witness that he had not answered a question, followed by a direction to answer it.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY,
Judge.

SATURDAY, MARCH 11, 1916.

DEFENDANT was convicted of the crime of keeping a house of ill fame, and appeals.—*Affirmed.*

*Parsons & Mills,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assis-

tant Attorney General, and *George A. Wilson,* County Attorney, for appellee.

PRESTON, J.—The defendant was jointly indicted with one Harry Levich and another. Separate trials were granted, and this defendant was tried after the Levich case was disposed of. The grounds most strongly relied upon for a reversal are the overruling of defendant's motion for a change of venue and motion for a continuance. The record is substantially the same on these two points as in the Levich case, disposed of at the present period. Our determination of these points in that case is against the contention of this defendant, and we deem it unnecessary to further discuss them.

Other errors assigned relate to rulings of the trial court on objections to evidence, in admitting evidence over objection, and excluding evidence objected to. They relate in the main to evidence as to declarations of Levich, the

1. CRIMINAL LAW : conspiracy : evidence : declarations of co-conspirator.

co-defendant of the defendant in this case, in relation to the character of the house and the conduct of inmates and others therein. No authorities are cited by appellant upon any of the propositions in regard to the rulings on the admissibility of testimony.

It is shown that Levich and Philleo were partners in the conduct of the place, and it is said by counsel for defendant that this is not enough to justify evidence of such declarations. But the evidence clearly shows that these parties were conducting the place and were the keepers thereof. Such declarations were admitted, after it had been clearly shown that Levich and Philleo were acting together, and in many instances were both present when many of the acts of prostitution and lewdness were committed. We shall set out some of the evidence briefly bearing upon this point:

"I came to Des Moines from Ottumwa about the first of February. Had been here a few days before I went to the Walnut Hotel. Went there in the forenoon, and saw Philleo and another man in the office. Jennie Zaring was with me.

She came up from Ottumwa with me. She and I went up to get a room, and there was some man in the office, and he called Philleo out from the other room. We registered and he took us up to our rooms just off from the office, which is a floor above the street. He asked us if we wanted a steady room, and said his partner, Levich, would be up in the afternoon. We stayed in that room for the afternoon, and we saw Harry Levich in the afternoon. Philleo was with him. They came to our room and wanted to know if we wanted a steady room; and we told them yes, if we could find work, and they got to arguing which one I belonged to. They said they would put us up on the other floor. They took us up. I had on a kimona and Jennie had on bloomers. After he took us to the third floor, he told us that was the room we could have. Before we moved up, Philleo asked us if we did any hustling. He asked us that in the afternoon when he first took us to our room. After we had been located on the third floor, Philleo and Levich came up to our room that night, after we were in bed. They asked us what kind of work we did. I told them I was a milliner and was looking for work. Philleo said to Levich, 'Come on, I have got to sleep with two women tonight, it will keep me busy.' Then Philleo left and Levich stayed. I saw Philleo the next day.''

Then the following questions were asked and objections made, the rulings upon which are assigned as error:

"Q. All right. Did you have any conversation with Levich in regard to bringing men into the Walnut hotel? (Objected to as immaterial, incompetent, unless in the presence of Philleo. Overruled. Defendant excepts.) A. Yes. Q. Go ahead, and tell the jury what it was. A. He asked if we would entertain men and we told him we might, and he told us how to do when he brought men up to us. Q. All right. Just tell the jury all about it. (Same objection. Not binding on the defendant. No foundation laid for the admission of such testimony. Overruled.) A. He told us that when he brought up a man to us, if it was $2.00 he would

motion this way (indicating), and if it was $3.00 he would give us that way, how much we was to charge him. Q. You may state the facts as to whether or not there were any people brought in there by anyone with whom you had intercourse? A. Yes. Levich brought me men. Q. How many and how often? (Same objections, ruling and exceptions.) A. He brought them to me almost every day I was there; every night. I was there a week. Q. What, if anything, did you do by way of charging these men for having intercourse? (Same record.) A. He told me how much to charge, and he said I was to give them a dollar for every man they brought up to me. Q. What is the fact as to whether or not you did give them any money. (Same record.) A. I did.''

The testimony of the Zaring girl is similar. There is other evidence in the record showing that these parties were acting together in conducting the Walnut Hotel. Furthermore, statements by Levich of the character indicated would be competent as bearing upon the character of the place and the inmates. The discussion of this question covers a number of other similar transactions under like circumstances.

2. PROSTITUTION, HOUSE OF: evidence: character of house: declarations.

It is assigned as error that testimony was permitted that cards were given to the girls with the name of the hotel thereon. The witness Celia Crow testifies that:

3. CRIMINAL LAW: conspiracy: evidence: declarations of co-conspirator.

''Levich gave me cards and told me to write my name on them, and told me to hand them out to men so that they would come to the hotel. Walnut hotel, and the phone number, and where it was located was on the card. I went by the name of Celia Nota there. Levich suggested it. Philleo was around the hotel most every evening, and during the daytime.''

This was after it had been shown by the testimony that Levich and Philleo were the keepers of the place and that they were acting in concert.

Another complaint by defendant is that the witness Celia

Crow, after having testified that she saw one Nellie Jones around there frequently while witness was there, was asked:

4. TRIAL: objections: sufficiency.

"Q. What, if anything, can you tell the jury what she was doing around there?" Over objection, the answer was: "She was doing the same thing I was." The objection as made did not include the one that it called for the conclusion of the witness. The objection was that the evidence was incompetent, irrelevant and immaterial and not brought to the attention of this defendant. The objection was properly overruled.

We have examined all the assignments of error and the record as to rulings upon evidence, and find no error therein.

It is thought by the defense that the trial court treated the witness Voegtlin harshly when she was testifying on her cross-examination, to the prejudice of the defendant. The record shows that the witness was evasive, and

5. TRIAL: conduct cf court: criticism of witness.

the court at one point said: "Answer the question 'Yes' or 'No.'" Defendant excepts. At another point in her cross-examination, after the State had moved to strike out an answer which was not responsive, the court said: "It may go out. Answer the question, Mrs. Voegtlin." Defendant excepts. Another answer was objected to by the State, and there was a motion to strike it out as not responsive, and counsel for defendant said:

"I submit that is a proper answer to that question. Court: That is not an answer to the question which is asked you. (Defendant excepts.) You just answer the question which is asked you."

This is the entire record on this point, and we think that there is no impropriety.

The case is an important one, and, because of its importance and the consequences to the defendant, we have examined the record carefully, and find no error. The judgment of the district court is therefore—*Affirmed*.

EVANS, C. J., DEEMER and WEAVER, JJ., concur.